John E. WINFIELD, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 84244.

Supreme Court of Missouri,
En Banc.

Dec. 24, 2002.

Rehearing Denied Jan. 28, 2003.

Gary E. Brotherton, Assistant State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Audara L. Charlton, Asst. Atty. Gen., Jefferson City, for respondent.

MICHAEL A. WOLFF, Judge.

John Winfield appeals the overruling of a Rule 29.15 motion to vacate his death sentences. This Court has exclusive jurisdiction.[1] This Court on direct appeal upheld Winfield's convictions and sentences. *See State v. Winfield,* 5 S.W.3d 505 (Mo. banc 1999). Judgment of the motion court is affirmed.

**Facts[2]**

Winfield was convicted in 1998 of two counts of first-degree murder, two counts of first-degree assault, and four counts of armed criminal action. After the jury's recommendations, the circuit court sentenced Winfield to death for each count of murder in the first degree, one life sentence and fifteen years, and four 75 year sentences for the remaining six counts of Winfield's conviction. Winfield timely filed a *pro se* motion for post-conviction relief, pursuant to Rule 29.15. The motion court held an evidentiary hearing, including live and deposition testimony. On December 17, 2001, the motion court issued its findings of fact and conclusions of law overruling Winfield's motion. This appeal followed.

**Winfield's Contentions**

Winfield raises eight points on appeal before this Court. Winfield contends that he received ineffective assistance of counsel because:

(1) Defense counsel prevented him from testifying during the penalty phase of the trial;

(2) Defense counsel allowed the jury to draw an adverse inference from Winfield's failure to testify during the penalty phase of the trial;

(3) Defense counsel was incompetent in the manner in which he questioned the defendant on direct examination in the guilt phase of the trial;

(4) He was not adequately represented in the post-conviction relief evidentiary hearing;

(5) Defense counsel failed to investigate and call Winfield's children as mitigation witnesses during the penalty phase of the trial;

(6) Defense counsel failed to investigate and present the details of Winfield's life in the penalty phase;

(7) Defense counsel failed to investigate Winfield's emotional state with an expert; and

(8) Defense counsel failed to offer an instruction regarding the weight to give statements.

**Standard of Review**

This Court's review of Winfield's claims is for the limited purpose of determining whether or not the motion court clearly erred in making its findings of fact and conclusions of law. *Skillicorn v. State,* 22 S.W.3d 678, 681 (Mo. banc 2000). To prove that counsel was ineffective, a movant must show that counsel's performance "did not conform to the degree of skill, care, and diligence of a reasonably competent attorney" and that movant was thereby prejudiced. *State v. Hall,* 982 S.W.2d 675, 680 (Mo. banc 1998) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To demon-

---

**1.** *Mo. Const. art. V, sec. 10; order of June 16, 1988.*

**2.** For a full-length account of the facts, *see Winfield,* 5 S.W.3d 505 at 508–510.

strate prejudice, a movant must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been different. *Id.* Moreover, this Court presumes that counsel acted professionally in making decisions and that any challenged action was a part of counsel's sound trial strategy. *Id.*

### Alleged Conduct in Preventing Winfield from Testifying in the Penalty Phase of the Trial

Winfield claims that defense counsel was ineffective for not allowing him to testify during the penalty phase of his trial. Winfield further argues that "... [b]ut for trial counsel's ineffectiveness ..., the outcome of [the] proceedings would have been different and [he] would not have received the death penalty." Winfield asserts that the holding articulated by *United States v. Teague*, 953 F.2d 1525 (11th Cir.1992), bolsters his argument. However, *Teague* does not assist Winfield's argument.

In *Teague*, defendant argued that his attorney deprived him of his constitutional right to testify in his own behalf, when his attorney rested the defense case without calling him to the stand, despite defendant's repeated indications that he wanted to testify. The court found that the evidence failed to show that the defendant's will was overborne by his counsel, to substantiate his claim that counsel's performance was constitutionally deficient. The court found the defendant was advised of his right to testify, was advised that he should not exercise that right, and did not protest when the defense rested its case.

Although Winfield's claim that *Teague* bolsters his argument is erroneous, the holding and rationale of the *Teague* court are applicable. The evidence here does not show that Winfield's will was overborne by his defense counsel.

The motion court found multiple reasons that Winfield's claim is not meritorious. First, the motion court found that Winfield was advised of his right to testify during the penalty phase of the trial, was advised that he should not exercise that right, and did not protest when the defense rested its case.

Second, the motion court found that Winfield decided that he did not want to testify. The motion court found that Winfield never told his defense counsel during the penalty phase that he wanted to testify, even though Winfield and defense counsel discussed the possibility of testifying in the penalty phase. Although there was testimony to contradict defense counsel's testimony, the motion court found defense counsel's testimony to be credible based upon the demeanor of defense counsel while testifying, the testimony taken as a whole, and the congruency between the record and the defense counsel's testimony. The motion court concluded that the only reason the trial court was not informed of Winfield's desire to testify was because Winfield did not want to testify during the penalty phase of the trial.

Finally, the motion court found that Winfield did not prove he was prejudiced by his failure to testify. The motion court found there was no reasonable probability that if he would have testified the result of the proceeding would have been different. The motion court concluded that if Winfield testified during the penalty phase he could have been impeached by his prior inconsistent statements as well as that testimony given during the guilt phase of the trial—which was conceded to be disastrous.[3]

**3.** During Winfield's deposition, Winfield claimed that he did not commit the murders

The motion court did not clearly err in making its findings of fact and conclusions of law on this issue.

**Defense Counsel Allegedly Allowed for the Jury to Draw an Adverse Inference from Winfield's Failure to Testify During the Penalty Phase**

Winfield claims, for the first time, that defense counsel rendered ineffective assistance by allowing the jury to use his failure to testify as an aggravating circumstance. Winfield argues that "any reasonably competent attorney whose practice involves capital murder would know that the no-adverse-inference instruction applied to penalty phase silence as well as guilt."

■ Rule 29.15(d) requires that all claims known to the movant for vacating, setting aside, or correcting the judgment or sentence shall be included in a post-conviction relief motion. Moreover, 29.15(d) mandates that the movant shall declare in the motion that the movant has listed all claims for relief known to the movant and shall acknowledge the movant's understanding that the movant waives any claim for relief known to the movant that is not listed in the motion. "The effect of Rule 29.15(d) is to bar all claims not raised in a timely filed pleading." *State v. Johnson*, 968 S.W.2d 686, 695 (Mo. banc 1998)(quoting *State v. Twenter*, 818 S.W.2d 628, 641 (Mo. banc 1991)).

Winfield failed to preserve this point by not raising it in his post-conviction relief motion. The point is procedurally defaulted.

■ Nonetheless, even if Winfield's claim were not procedurally barred, Winfield's claim is without merit. Winfield fails to show that he was prejudiced by the failure to request the "no-adverse-infer-

ence" instruction. Winfield contends that had jurors known that his silence during the penalty phase could not be considered, a reasonable probability exists that they would have opted for life imprisonment without probation or parole. This argument is unpersuasive. Winfield fails to set forth any evidence that the instruction would have resulted in a different outcome, except that the jury spent over 5 one-half hours deliberating without the presence of the instruction. To conclude that with the presence of the "no-adverse-inference" instruction that the jury would have opted for life imprisonment instead of the death penalty is speculative. With no more than arguments and conclusions grounded in speculation, Winfield cannot establish prejudice.

**Counsel's Direct Examination of Winfield in the Guilt Phase of the Trial**

Winfield asserts that defense counsel in direct examination interrogated him by attacking his testimony whenever it did not comport with what his trial counsel believed actually happened. Winfield contends that his trial counsel performed as the state's advocate rather than his own, resulting in Winfield being cross-examined not only by the state—but by defense counsel as well.

■ The record reflects that defense counsel was confronted with indisputable facts that Winfield shot three persons, killing two of them. The apparent theme of the defense was that Winfield "snapped" and the killings were acts that did not involve deliberation. The highly confrontational, and indeed cross-examinational, nature of the direct-examination was a matter of trial strategy implemented for the benefit of Winfield, not advocacy for the state. The objective of the trial strate-

and stated that he would have testified to that during the penalty phase of the trial.

gy apparently was to create some sort of "psycho-drama" in which Winfield would spontaneously snap during this pressured examination so the jury could see that Winfield is a volatile, emotional, impulsive person—but not a deliberative actor. This strategy to portray Winfield as an explosive person—in order to mitigate the murders from first-degree to second-degree— was deemed a disaster by defense counsel's own admission. In fact, one could argue that the strategy was too risky and failure was inevitable. But, tactical and strategic decisions, which might have been handled differently by many or even most attorneys, will not establish incompetence. *See Laws v. Armontrout,* 834 F.2d 1401, 1408 (8th Cir.1987); *see also* JOSEPH G. COOK, CONSTITUTIONAL RIGHTS OF THE ACCUSED section 8:18 (3rd ed.1996).

Winfield concedes that defense counsel voiced a theory that Winfield committed the shootings—but did not commit the shootings deliberately. The crux of Winfield's defense was that "all of a sudden he just lost it." However, Winfield asserts that defense counsel did nothing to move this theory forward. On the contrary, defense counsel's implementation of highly confrontational direct-examination techniques in order to elicit some emotion from Winfield can be argued as a valid attempt to assert this "all of a sudden he just lost it" theory. What may have appeared to be advocacy for the state—and against Winfield—might have been the only plausible method of trying to exonerate Winfield from a death sentence, in light of the egregious facts that surround this case.

 The motion court found that Winfield was fully advised of his right to testify or not to testify and the advantages and disadvantages of both. Trial counsel cannot be held ineffective because trial counsel's direct examination of Winfield elicited damaging evidence. *State v. Smith,* 871 S.W.2d 67 (Mo.App.1994). Winfield cannot overcome the presumption that defense counsel's direct examination techniques were part of a sound trial strategy.

The motion court did not clearly err in its findings of fact and conclusions of law on this issue.

## Post–Conviction Counsel's Conduct During the Post–Conviction Relief Evidentiary Hearing

Winfield claims, for the first time on appeal, that his right to effective counsel was violated by the ineffective assistance rendered by counsel during the post-conviction relief evidentiary hearing. Winfield alleges that post-conviction relief counsel failed to raise any claim regarding his right to have the "no-adverse-inference" jury instruction submitted during penalty phase and any claim regarding the total breakdown in communication between members of his defense team. Winfield also alleges that although post-conviction relief counsel alleged several questions that defense counsel should have asked regarding unadjudicated assaults against Carmelita Donald, post-conviction counsel failed to hint at what type of answers defense counsel might have elicited. Winfield's claim is without merit.

 There is no recognized constitutional right to counsel in a post-conviction proceeding. *State v. Hunter,* 840 S.W.2d 850, 871 (Mo. banc 1992). As a result, a post-conviction movant has no right to effective assistance of counsel. *Id.* Winfield's claim is not reviewable, *id.,* nor cognizable on appeal. *State v. Parker,* 886 S.W.2d 908, 933 (Mo. banc 1994).

 Winfield's claim does not fall within the class of recognized acts that would subject it to an abandonment analysis. Abandonment occurs when (1) post-conviction counsel takes no action on a movant's behalf with respect to filing an amended

motion and as such the record shows that the movant is deprived of a meaningful review of his claims; or (2) when post-conviction counsel is aware of the need to file an amended post-conviction relief motion and fails to do so in a timely manner. *Moore v. State,* 934 S.W.2d 289, 291 (Mo. banc 1996). Winfield advocates for the concept of abandonment to be extended in order to encompass "materially incomplete action."

Winfield argues that the present state of Rule 29.15, which makes the counsel the master of the post-conviction case, punishes him by determining that he waived any claim that he knew about, but that post-conviction counsel omitted. This Court has stated that it will not expand the scope of abandonment beyond the aforementioned two-part criteria. *See State v. Ervin,* 835 S.W.2d 905, 928–29 (Mo. banc 1992). Therefore, the concept of abandonment is not applicable to Winfield's argument.

Winfield also argues that if this Court concludes that "materially incomplete action" does not constitute abandonment, this Court must find that Rule 29.15 serves as the first appeal of right as to one's right to effective counsel. To conclude that Rule 29.15 serves as the first appeal of right contradicts established federal case law. *See Nolan v. Armontrout,* 973 F.2d 615, 617 (8th Cir.1992).

### Defense Counsel's Alleged Failure to Investigate and Call Winfield's Children, Mykale Donald and Symone Winfield, as Mitigation Witnesses During the Penalty Phase of the Trial

Winfield claims that defense counsel was ineffective for failing to investigate and call Mykale Donald and Symone Winfield—Winfield's two children—as witnesses dur-

ing the penalty phase of the trial. Winfield alleges that the children would have provided evidence that Winfield "did many fun activities with them, taught them how to do things and loved them deeply."

"A decision to not call a witness is presumed trial strategy unless clearly shown to be otherwise." *Rousan v. State,* 48 S.W.3d 576, 582 (Mo. banc 2001). When defense counsel believes a witness' testimony would not unequivocally support his client's position, it is a matter of trial strategy not to call him, and the failure to call such witness does not constitute ineffective assistance of counsel. *Id.* at 587. The motion court found that defense counsel's decision not to call Winfield's children as mitigation witnesses was based upon trial strategy.[4]

The motion court also found that testimony given by Mykale Donald and Symone Winfield in lieu of testifying at the post-conviction relief hearing would essentially have been cumulative of the evidence given during trial. During the penalty phase, defense counsel called John Edmond as a witness. Edmond testified to Winfield's relationship with Mykale Donald and Symone Winfield.

The motion court did not clearly err in its findings of fact and conclusions of law on this issue.

### Defense Counsel's Alleged Failure to Investigate and Present the Details of Winfield's Life History

Winfield alleges that defense counsel rendered ineffective assistance of counsel in failing to investigate and present details of his life history and that a reasonably incompetent attorney would have not called upon Winfield's mother and grand-

---

4. Defense counsel testified during the post-conviction relief hearing that, as a matter of trial strategy, he thought using Symone Winfield and Mykale Donald would have hurt the defense and decided not to call them as witnesses.

mother as the only sources of Winfield's life history. Winfield contends that Katherine Patton–Bennett, Maurice Patton, Darrell Jefferson, Frank Elliott, John Sutherland, Jr., and David Winfield were willing and able to convey his life history to the jury.[5]

 "Failing to present cumulative evidence is not ineffective assistance of counsel." *Bucklew v. State*, 38 S.W.3d 395, 401 (Mo. banc 2001) (quoting *State v. Johnston*, 957 S.W.2d 734, 755 (Mo. banc 1997)). Much of the evidence these witnesses would have presented would have been needlessly cumulative to evidence the defense presented during the penalty phase of trial.

As discussed above, the motion court found that the testimony elicited from John Edmond—Winfield's father—conveyed Winfield's life history to the jury. Edmond's testimony depicted the relationships that Winfield had with his mother, his stepmother, his grandmother, his children, and Carmelita Donald—one of the shooting victims.

Moreover, the motion court found that defense counsel conveyed Winfield's life history to the jury by calling Marsha Edmond, Rosalie Bell, David Winfield,[6] and cross-examining Carmelita Donald.[7] Defense counsel testified that he investigated every witness given to him by Winfield regarding the penalty phase of the trial and selected which witnesses to call and exclude as a matter of trial strategy.

The motion court did not clearly err in its findings of fact and conclusions of law on this issue.

### Defense Counsel's Alleged Failure to Investigate Winfield's Emotional State During the Shootings with an Expert

Winfield argues that he received ineffective assistance of counsel based upon counsel's alleged failure to properly investigate a mitigation defense of "extreme emotional disturbance." Winfield further argues that defense counsel should have presented expert testimony to establish the defense. The motion court determined that both the court file and Winfield's own testimony refute Winfield's argument.

 The court file contained the reports from a court-ordered psychiatric examination and a defense-requested psychiatric examination performed by Drs. Rabun and Cuneo, respectively. Both doctors opined that Winfield did not suffer from any mental illness. Thus, defense counsel determined—as a matter of trial strategy—not to use psychiatric testimony during the penalty phase. Defense counsel testified that in determining whether to use Dr. Rabun as an expert during the penalty phase, he relied upon Dr. Rabun's finding that "... a mental disturbance did not substantially affect Mr. Winfield's behavior during the instant offense." As a result, defense counsel testified that he decided not to use Dr. Rabun or another witness because he did not believe he had sufficient evidence to support the instruction. The court file

---

5. Winfield claims that these potential witnesses would have testified that Winfield collected comic books as a youth; played football with a youth organization, and often had to ride his bike 20 miles to practice; watched over his cousin Maurice and helped influence him to become an artist; and that Winfield had the weight of the world on his shoulders as the man of the house.

6. Winfield claims that David Winfield was not called as a witness by defense counsel, but the record reflects that David Winfield did testify at trial.

7. Like John Edmond, these witnesses' testimony depicted Winfield's life as a child and an adult in an effort to convey Winfield's life to the jury.

establishes that defense counsel did investigate the usage of expert testimony regarding Winfield's emotional state during the shootings.

 Winfield further argues that defense counsel should have investigated and presented expert evidence that Winfield suffered from an extreme emotional disturbance at the time of the murders. However, the motion court found that Winfield's own testimony refutes ˙this argument. During the guilt phase of the trial, Winfield testified that he "wasn't happy" but denied that he was "upset, confused or angry" during the moments leading up to and including the shootings. Winfield also testified during his deposition that he did not want his attorneys to put on evidence that he was suffering from an extreme mental or emotional state when he committed the crimes. Moreover, defense counsel cannot be found ineffective for failing to shop for a more favorable expert witness. *State v. Copeland*, 928 S.W.2d 828, 845 (Mo. banc 1996).

The motion court did not clearly err in its findings of fact and conclusions of law on this point.

**Defense Counsel's Failure to Offer an Instruction Regarding the Weight to Give Statements**

■ Winfield alleges defense counsel was ineffective for failing to submit a jury instruction based on MAI–CR3d 310.06.[8] The motion court found that the allegation is without merit. The trial court concluded that Winfield's admissions to the police

were admissible. This Court on direct appeal found that the record clearly reflected the constitutional validity of Winfield's waiver with respect to his *Miranda* rights. *See Winfield*, 5 S.W.3d at 512. The motion court found that the MAI–CR 3d instruction would serve only to direct attention to an obviously voluntary confession. Moreover, Winfield cannot show any prejudice from trial counsel's failure to request MAI–CR 3d 310.06, because he has not set forth any evidence that his statements to police were coerced or uninformed.

The motion court did not clearly err in making its findings of fact and conclusions of law on this issue.

## CONCLUSION

Based upon the foregoing, this Court concludes that the motion court did not clearly err in making its findings of fact and conclusions of law after hearing Winfield's motion for post-conviction relief. Winfield is unable to prove that his defense counsel was ineffective, nor can Winfield prove prejudice based upon the asserted inadequate representation. Winfield has also failed to show that his post-conviction counsel's conduct entitles him to relief. The judgment of the motion court is affirmed.

All concur.

■

---

8. The pertinent part of MAI–CR 310.06 provides: "Evidence has been introduced that the defendant made certain statements relating to the offense for which he is on trial. If you find that a statement was made by the defendant, and that at that time he understood what he was saying and doing, and that the statement was freely and voluntarily made under all of the circumstances surrounding and attending the making of the statement, then you may give it such weight as you

believe it deserves in arriving at your verdict. However, if you do not find and believe that the defendant made the statement, or if you do not find and believe that he understood what he was saying and doing, or if you do not find and believe that the statement was freely and voluntarily made under all of the circumstances surrounding and attending the making of the statement, then you must disregard it and give it no weight in your deliberations."