# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2478

_____

John E. Winfield,                         *
                                          *
          Petitioner-Appellant,           *
                                          *     Appeal from the United States
     v.                                   *     District Court for the Eastern
                                          *     District of Missouri.
Don Roper, Superintendent,                *
                                          *
          Respondent-Appellee.            *

_____

Submitted: June 13, 2006
Filed: August 22, 2006

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

     John Winfield was convicted in Missouri state court of multiple counts of murder, assault, and armed criminal action and was sentenced to death. After his conviction and sentence were affirmed by the Missouri Supreme Court on direct appeal, he moved for post conviction relief in the state circuit court. That motion was denied after an evidentiary hearing, and the Missouri Supreme Court affirmed. Winfield then petitioned the federal district court[1] for a writ of habeas corpus. The

_____

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

petition was denied, and Winfield was granted a certificate of appealability on three issues, all of which have been briefed and argued. We now affirm.

## I.

John Winfield met Carmelita Donald in 1987, and she and her son Mykale Donald eventually moved in with him. They subsequently had a daughter, Symone Winfield. They had a difficult relationship, which Carmelita ended in the spring of 1996. She moved into a second floor apartment on Page Street in St. Louis, Missouri with her sister, Melody Donald, and their friend Arthea Sanders. Winfield lived with his family about one block away on Liberty Street.

On the night of September 9, 1996 Carmelita went out with her then boyfriend Tony Reynolds. Winfield was unaware of this relationship and called her apartment numerous times between 10:00 and 11:00 pm that evening trying to reach her. He spoke with Melody and asked where Carmelita was. Melody replied that she did not know, and Winfield told Melody to have Carmelita call him when she got home. Later that evening Winfield went to Carmelita's apartment looking for her. By that time Melody had learned from Arthea that Carmelita was out with Reynolds, so the two women decided to lie to Winfield and told him that she was with Arthea's mother. Melody then went downstairs to Shawnee Murphy's apartment in order to call Arthea's parents to let them know what had been said to Winfield. When Melody returned to her apartment, she discovered that Winfield had destroyed some of her furniture. As he was leaving the apartment, Winfield remarked that he would "kick [Carmelita's] ass."

When Carmelita returned home around midnight, Winfield was waiting for her. He forced her into an adjacent parking lot to talk and repeatedly asked Carmelita whether she was having a relationship with Reynolds, which she denied. Melody and Shawnee watched the altercation from Shawnee's apartment, but Arthea went outside

and slashed the tires on Winfield's car. Then Arthea returned to Shawnee's apartment and told the others to call the police.

Winfield, seeing that his tires had been slashed, went to his car, retrieved his gun, and went into Shawnee's apartment. He shot Arthea in the head from close range, killing her. He then turned the gun on Carmelita, said "[f]uck you bitch" and shot her numerous times. Carmelita did not die, but she suffered multiple gunshot wounds and underwent emergency brain surgery. She was left completely blind and facially disfigured. Winfield then shot and killed Shawnee and turned the gun towards Shawnee's guest, James Johnson, and Melody. Melody escaped out of the back door of the apartment and ran next door to call the police. Johnson struggled with Winfield in an effort to gain control of the gun. Winfield tried to shoot him, but the gun either jammed or was empty so he hit Johnson on the head with the gun and fled the scene.

The police arrested Winfield the following day. After being informed of his rights, Winfield told the police that he had thrown the gun in a creek near a newly constructed bridge. The gun was not found, but officers searched Winfield's home and discovered .380 caliber bullets in his bedroom, the same type of ammunition used in the shooting.

Winfield retained attorneys Scott Rosenblum and Brad Kessler to represent him. At that time the two attorneys worked together in Rosenblum's law firm. They agreed that Kessler was to handle the guilt phase of the trial and Rosenblum was to handle the penalty phase. The relationship between the lawyers deteriorated, and Kessler left the firm three months prior to trial. He took case files with him, but not any of the penalty phase materials necessary for Rosenblum's portion of the defense.

Two months prior to trial Winfield filed a malpractice action against his attorneys, alleging that they had failed to consult with him adequately regarding the defense, that they had failed to investigate in preparation for his defense, and that they

had failed to prepare a meaningful defense.[2]  Winfield nevertheless continued to allow Kessler and Rosenblum to represent him.  He never informed the court of his lawsuit or of any problems with counsel, and he never asked the court to appoint new counsel.

Trial began on July 13, 1998, and from the outset the defense admitted Winfield's acts on the night of September 9, 1996.  The theory of the defense was that Winfield's actions that evening were not deliberate, but rather that he had acted in the heat of the moment.  Winfield testified in his own defense and admitted his acts, but claimed that he had not planned "on hurting nobody" and that he had just "snapped."  He also admitted initially lying to the police when he claimed that another person had used his gun.  The jury found him guilty of two counts of first degree murder, two counts of first degree assault, and four counts of armed criminal action in violation of state law.

At the penalty phase of the trial the state presented a certified copy of Winfield's prior conviction for receiving stolen property.  Carmelita also testified that Winfield had abused her in the past, including an incident where he put a gun to her head until she submitted to his sexual demands.  The state also called Arthea's mother, Melody Sanders, and Shawnee's mother, Gerry Murphy.  The penalty defense was presented by Rosenblum who sought to portray Winfield as an otherwise law abiding family man who just "snapped" the night of the murders.  The defense called four witnesses: Winfield's father John Edmund, his stepmother Marsha Edmond, his brother David Winfield, and a family friend from church, Rosalie Bell.  These witnesses testified that Winfield had a good relationship with his children, that he provided for the family, that he was a great family man, and that he had generally been law abiding.  Winfield

---

[2] Winfield failed to pay the proper filing fee, and his complaint was returned to him three months later.  After his trial he refiled the lawsuit, but a motion to dismiss was granted on collateral estoppel grounds.  Winfield's attempted appeal was dismissed as premature since there was no judgment.

did not testify during the penalty phase. After deliberating for almost six hours, the jury recommended a sentence of death which was imposed by the court. The circuit court also sentenced Winfield to life imprisonment plus fifteen years on the two assault counts and to seventy five years on each count of armed criminal action.

Winfield filed a direct appeal of his conviction and sentence, which the Missouri Supreme Court affirmed. State v. Winfield, 5 S.W.3d 505 (Mo. 1999). Winfield then changed defense counsel and filed a motion for post conviction relief in the Circuit Court of St. Louis County pursuant to Missouri Supreme Court Rule 29.15. He raised various claims in his motion including ineffective assistance of counsel based on many grounds, but conflict of interest was not among them. He later sought to amend his filings to include a conflict of interest claim alleging that the falling out between his lawyers had created divided loyalties and that his pending lawsuit against them created an actual conflict of interest. The circuit court ruled that the amendment was not timely and was thus procedurally barred.

The circuit court held an evidentiary hearing at which various witnesses testified, including Attorneys Kessler and Rosenblum, Kessler's assistant Linda Bates, Lisa Jones and Melissa Niehoff from the state prosecutor's office. The circuit court later issued its decision denying Winfield's motion for post conviction relief. He appealed the decision to the Missouri Supreme Court and attempted to include his tardy conflict of interest claim in a separate pro se brief. The court clerk refused to accept the pro se brief for filing because Winfield was represented by counsel and the claim had not been raised by his counsel in his submission. The Missouri Supreme Court affirmed Winfield's conviction and sentence. Winfield v. State, 93 S.W.3d 732 (Mo. banc 2002).

Winfield then filed this petition for a writ of habeas corpus in the United States District Court for the Eastern District of Missouri, alleging fourteen errors. Many of these claims asserted ineffective assistance of counsel, especially of penalty counsel,

but they also included a separate claim of conflict of interest based on the malpractice suit Winfield had lodged against his attorneys as well as the problems between the two lawyers. The district court denied the petition. It concluded that Winfield's counsel had not been ineffective and that his conflict of interest claim was procedurally barred because Winfield had failed to include that claim in his initial motion for post conviction relief and had only asserted it in the rejected pro se brief. The district court concluded that the state circuit court had thus disposed of the claim on an independent and adequate state ground. Winfield sought to appeal, and we certified the following issues: whether Winfield's counsel was ineffective in the penalty phase for failure to investigate, to present particular witnesses, and to call him to testify, and whether Winfield's conflict of interest claim was procedurally barred from habeas review.

II.

Winfield argues that both of his attorneys were ineffective during the penalty phase of the trial. He claims that penalty counsel was ineffective for failing to investigate and call certain witnesses and that trial counsel was ineffective for failing to ensure that he was able to testify during the penalty phase.

We review the district court's findings of fact for clear error and its legal conclusions de novo. Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005); Kenley v. Armontrout, 937 F.2d 1298 (8th Cir. 1991) (reviewing claims of ineffective assistance de novo). Because the ineffectiveness claim has been adjudicated on the merits in state court, habeas relief is appropriate only if the state court adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

-6-

To be eligible for habeas relief based on ineffective assistance of counsel Winfield must meet the two part test announced in Strickland v. Washington, 466 U.S. 668, 687 (1984). He must first establish that counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88; Wiggins v. Smith, 539 U.S. 510 (2003). If he establishes that, Winfield must then show that the deficient performance prejudiced his defense. Strickland. 466 U.S. at 687. This requires proving that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to Winfield. Id. at 690-91. A reasonable probability is one "sufficient to undermine confidence in the outcome." Wiggins, 539 U.S. at 534. Merely showing a conceivable effect is not enough. Winfield must demonstrate that there is a reasonable probability that absent counsel's inadequate representation, the jury would not have sentenced him to death. Kenley, 937 F.2d at 1303-04.

Winfield first claims that penalty counsel did not conduct a proper investigation or present particularized facts in support of his penalty phase theory and failed to call certain witnesses who would have been supportive. Winfield claims that his children Symone Winfield and Mykale Donald, his friend John Sutherland, his mother Evylyn Winfield, and his grandmother Delores Dent would have told the jury how he was the "man of the house" and a "good father," would have described the traumatic events Winfield suffered in the years leading up to the murders, and would have explained why he just "snapped" the night of the murders.

Counsel's decision not to call particular witnesses during the penalty phase of trial must be viewed as of the time it was made, Preston v. Delo, 100 F.3d 596, 604 (8th Cir. 1996), and his decision is presumed to be one of trial strategy "unless clearly shown to be otherwise." Rousan v. State, 48 S.W.3d 576, 582 (Mo. banc 2001). The circuit court concluded that penalty counsel's decision not to call these witnesses was part of his trial strategy and that their testimony would have been cumulative to that

already offered, and this decision was affirmed by the Missouri Supreme Court. Winfield, 93 S.W.3d at 739. The record reveals that neither child wanted to testify, Symone would have testified about the hardship that Winfield's actions caused her mother Carmelita, and Mykale would have testified as to past violent incidents involving Winfield. Rather than call these children, Rosenblum called Winfield's father, John Edmond, and stepmother, Marsha Edmond, who both testified to Winfield's good relationship with his children. Even Carmelita admitted on cross examination that Winfield loved his children.

Not only was the decision not to call the children reasonable trial strategy, but their testimony would have been cumulative to that which was introduced. See Bucklew v. Luebbers, 436 F.3d 1010 (8th Cir. 2006) (counsel not ineffective for not calling witnesses who would damage his case or whose testimony would be cumulative); Schulp v. Armontrout, 941 F.2d 631, 639 (8th Cir. 1991) (counsel not ineffective for not calling a witness who would damage the defense's case); Hall v. Luebbers, 296 F.3d 685, 694 (8th Cir. 2002) (counsel not ineffective for failing to adduce cumulative evidence). Similarly, the decision not to call Winfield's friend John Sutherland was reasonable since Sutherland had a criminal history and penalty counsel testified that he had tried to separate Winfield from "contacts like that." We agree with the district court that the state court conclusions in respect to these particular witnesses were not contrary to, or an unreasonable application of, clearly established federal law, nor were they based on an unreasonable determination of the facts.

Winfield did not raise the arguments regarding the failure to call his mother Evylyn or his grandmother Delores in the state court proceedings. Because a federal habeas petitioner's claims must rely on the same factual and legal bases relied on in state court, Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994), Winfield has defaulted these particular claims. His default will be excused only if Winfield shows cause and prejudice or miscarriage of justice, Coleman v. Thompson, 501 U.S. 722,

750 (1991), neither of which he has done. Because apparently false statements related to Winfield's alibi defense had been made in depositions by his mother and grandmother and they would have been revealed to the jury, their testimony would likely have done more harm than good. Winfield has not shown he was prejudiced by the failure to call them.

Winfield further complains that penalty counsel never interviewed his aunt Katherine Patton-Bennett, his cousins Maurice Patton and Frank Elliot, or his friend Darrell Jefferson. He asserts that failure to interview and call these witnesses establishes ineffectiveness. Since the district court did not address this claim, he argues that its decision should be reversed.

Counsel is required to make a reasonable investigation in preparing his defense, including reasonably deciding when to cut off further investigation. Strickland, 466 U.S. at 691. Penalty counsel admitted that he did not interview Maurice Patton, Frank Elliot, Darrell Johnson, or Katherine Patton-Bennett, but Winfield has not shown that this prejudiced his defense. The Missouri Supreme Court found that had these witnesses been called, their testimony would have been cumulative and consequently they did not need to be called. Winfield, 93 S.W.3d at 739-40. See also Hall, 296 F.3d at 694; Bucklew v. State, 38 S.W.3d 395, 401 (Mo. banc 2001) ("failing to present cumulative evidence is not ineffective assistance of counsel"). Moreover, Darrell Jefferson had a criminal record, and experienced penalty counsel had already made a reasonable decision not to call a different individual with a criminal background because he did not want the jury to associate Winfield with criminals. Katherine Patton-Bennett would have provided testimony critical of victim Carmelita, which penalty counsel wanted to avoid since it could alienate the jury. We conclude that the failure to present cumulative testimony is not contrary to, or an unreasonable application of, federal law, Hall, 296 F.3d at 694, and that Winfield suffered no prejudice by counsel not calling these witnesses.

-9-

Winfield also argues that trial counsel rendered ineffective assistance by failing to ensure that he was able to testify during the penalty phase of the proceedings. Although attorney Rosenblum was responsible for the penalty phase, Winfield argues that attorney Kessler knew of his desire to testify and should have intervened to ensure that he was able to testify.

The state circuit court held an evidentiary hearing to develop the issue of whether Winfield had indicated to counsel that he wanted to testify in the penalty phase. Rosenblum testified that he had talked with Winfield about his right to testify, that he had advised him not to exercise that right, and that Winfield never told him that he wanted to testify. Attorney Kessler and his assistant Linda Bates testified that at a time when Rosenblum was not present, Winfield told Kessler that he wished to testify. Kessler testified that he told Rosenblum of Winfield's desire to testify immediately before the defense rested at the penalty phase, but that he was "wave[d] off." Rosenblum denied that Kessler ever told him that Winfield wanted to testify.

The circuit court considered all of the evidence and found that Rosenblum's testimony was credible but that Kessler, Bates, and Winfield were not. The circuit court found that Winfield had been informed of his right to testify at the penalty phase, had been advised by penalty counsel not to exercise that right, and made no protest when the defense rested its case. The court not only found that Winfield had waived his right to testify at the penalty phase, but also that he had not demonstrated prejudice from penalty counsel's failure to call him to the stand. The Missouri Supreme Court determined that the circuit court's findings were not clearly unreasonable, Winfield, 93 S.W.2d at 736-37, and affirmed.

After examining the record, the federal district court concluded that the circuit court's factual findings were fairly supported and that Winfield had not demonstrated prejudice from his failure to testify. We review the district court's legal conclusions de novo and its factual findings for clear error. Frey v. Schuetzle, 151 F.3d 893, 897

-10-

(8th Cir. 1998).[3]  We presume that state court findings of fact are correct and will reverse only if they are not supported by the record. Whitehead v. Dormire, 340 F.3d 532, 536-37 (8th Cir. 2003); Bounds v. Delo, 151 F.3d 1116, 1118 (8th Cir. 1998).

While a defendant has a right to testify during the penalty phase of his trial, waiver of that right is properly found where, as here, the defendant did not object when his counsel rested without calling him to testify. United States v. Bernloehr, 833 F.2d 749, 751 (8th Cir. 1987).  Winfield's claim that he did not waive his right to testify was fully explored at the evidentiary hearing in the post conviction proceedings, and the state circuit court found that penalty counsel's testimony was credible, unlike that of Winfield, Kessler, and Bates.  The circuit court was affirmed by the Missouri Supreme Court. Winfield, 93 S.W.2d at 736-37.  Issues of credibility are left to the discretion of the state courts, Pittman v. Black, 764 F.2d 545, 546 (8th Cir. 1985), and nothing in the record suggests that the state court erred in its determinations. See Frey, 151 F.3d at 898.

Moreover, even if we were to find that counsel was deficient by not calling Winfield to testify, the record indicates that he suffered no prejudice.  Not only would Winfield's testimony have been cumulative, he would have denied committing the murders which would have been contradicted by his trial testimony and the jury verdict.  Indeed, this was the reason penalty counsel advised him not to testify.  After examining the record, we conclude that the state court did not err in its application of federal law to the issue of whether counsel was ineffective for failure to call Winfield at the penalty phase or make an unreasonable determination of the facts.  The district court did not err in denying relief on this ground.

---

[3] Winfield seems to argue that the asserted failure of counsel to allow him to testify was a due process violation, but such claims are more properly framed as ineffective assistance claims to be evaluated under Strickland. See Hines v. United States, 282 F.3d 1002,1005 (8th Cir. 2002); United States v. Teague, 953 F.2d 1525, 1534 (11th Cir. 1992).

III.

Winfield complains that the district court erred in finding his conflict of interest claim procedurally barred. He contends that his conflict of interest claim could have been defaulted only if the last state court to consider it had expressly denied it on the basis of an independent and adequate state ground and that the Missouri Supreme Court had relied on a nonexistent rule against pro se briefs from represented parties. In addition, Winfield claims that his counsel's brief had preserved the conflict of interest claim because it is closely related to the ineffective assistance arguments made in the brief.

The state responds that under Missouri Supreme Court Rule 29.15, Winfield's conflict of interest claim was not timely filed and that this procedural default serves as an independent and adequate state ground to bar consideration of the claim at this time. It contends that a Rule 29.15 default is a separate and distinct issue from whether the refusal to accept Winfield's pro se brief was based on an applicable procedural rule. The state argues that review of the conflict of interest claim would be proper only if Winfield had demonstrated cause and prejudice or actual innocence, which he has not done.

Although a habeas claim need not present an "exact duplicate" of one raised in the state proceedings, Odem v. Hopkins, 192 F.3d 773, 776 (8th Cir. 1999), it must present the same factual and legal bases as in state court in order for the claim to be preserved. Anderson v. Groose, 106 F.3d 242, 245 (8th Cir. 1997). Winfield's state law claims presented by his attorney made no mention of a possible conflict of interest or of the malpractice suit he had filed against Rosenblum and Kessler. We therefore conclude that counsel's submissions did not preserve that claim for habeas review.

The more difficult question is whether the conflict of interest issue was preserved by Winfield's mention of it in his pro se brief, despite the refusal of the

-12-

clerk of the Missouri Supreme Court to file it and his counsel's subsequent failure to raise the claim in his official filing. To our knowledge we have not previously been presented with a case where a claim defaulted in the lower state court was not addressed in the state supreme court because the clerk refused to accept a pro se filing from a party represented by counsel.[4]

We are prohibited from reviewing an issue that the state court has resolved on an adequate and independent state ground, including procedural default. Reagan v. Norris, 279 F.3d 651, 656 (8th Cir. 2002). The procedural rule relied upon by the state court must be "firmly established, regularly followed and readily ascertainable when it was applied," however. Malone v. Vazquez, 138 F.3d 711, 717 (8th Cir. 1998).

It is far from clear that the Missouri Supreme Court has a clearly established and regularly followed rule prohibiting defendants represented by counsel from filing a pro se brief. We noted in Clemmons v. Delo, 124 F.3d 944 (8th Cir. 1997), that "[n]o rule of court or reported Missouri case of which we are aware specifies the circumstances under which Missouri appellate courts allow pro se briefs. . . . Sometimes Missouri courts allow pro se briefs, and sometimes they do not. That is their prerogative." Id. at 948 n.3.

The state has not demonstrated that since our decision in Clemmons the Missouri Supreme Court has provided a clear and ascertainable rule. Quite the contrary. The state's 28(j) letter submitted following oral argument in this court concedes that on numerous occasions the Missouri Supreme Court has accepted pro

---

[4] In many of our habeas cases the state supreme court has refused to consider an issue on appeal because it was defaulted in the lower court; in such circumstances there is no question that the claim is barred from habeas review. See, e.g., Malone v. Vazquez, 138 F.3d 711, 717 (8th Cir. 1998); Sloan v. Delo, 54 F.3d 1371, 1377 (8th Cir. 1995).

se briefs filed by defendants already represented by counsel. <u>See, e.g.</u>, <u>State v. Wise</u>, 879 S.W.2d 494, 525 (Mo. banc 1994); <u>O'Neal v. State</u>, 766 S.W.2d 91, 92 (Mo. banc. 1989); <u>State v. Clemmons</u>, 753 S.W.2d 901, 908 (Mo. banc 1988); <u>State v. Guinan</u>, 732 S.W.2d. 174, 177 (Mo. banc 1987); <u>State v. O'Neal</u>, 718 S.W.2d 498, 503 (Mo. banc 1986); <u>State v. Bannister</u>, 680 S.W.2d 141, 146 (Mo. banc 1984); <u>State v. Laws</u>, 661 S.W.2d 526, 529 (Mo. banc 1983); <u>State v. Peterson</u>, 518 S.W.2d 1, 2, 4 (Mo. 1974); <u>Mooring v. State</u>, 501 S.W.2d 7, 10 (Mo. 1973); <u>State v. Turley</u>, 452 S.W.2d 65, 66-67 (Mo. 1970).

The state contends, however, that over the past twelve years there have not been any pro se briefs accepted by the Missouri Supreme Court when the author was represented by counsel.  It argues that the record is thus very different from the one we surveyed in <u>Clemmons</u>.  While this may be true, a change in the practice of the Missouri Supreme Court alone is not enough.  For the rule on which it relied must have been a clear and ascertainable rule; here there is no such rule.[5] We conclude that Winfield's conflict of interest claim is not procedurally barred by the court clerk's decision not to file his pro se brief. <u>See</u> <u>Hall</u>, 296 F.3d at 695; <u>Clemmons</u>, 124 F.3d at 948 n.3.

That is not the end of the inquiry, however.  The state alleges that Winfield's failure to file a timely conflict of interest claim with the circuit court bars habeas review, regardless of the effect of the Missouri Supreme Court clerk's refusal to file Winfield's pro se brief.  Winfield responds that  his failure to comply with the filing period in Rule 29.15 should not prevent us from reaching the procedural issue.  He alleges that in order to bar review, the last state court to consider the case "must

---

[5] If it has now become the formal practice of the Missouri Supreme Court not to accept pro se briefs from parties represented by counsel or to accept them in limited circumstances, we encourage the court to articulate that practice clearly or to codify it formally in the rules.

actually have relied on the procedural bar as an independent basis for its disposition of the case." Harris v. Reed, 489 U.S. 255, 261-62 (1989).

Missouri Supreme Court Rule 29.15 provides that a motion for post conviction relief must include "every claim known to the movant," and any claim not raised in the initial Rule 29.15 motion is waived. Mo. S. Ct. Rule 29.15 (1979).  Winfield did not include the conflict of interest claim in his initial 29.15 motion, and his attempt to amend the motion was denied as untimely.  His conflict of interest claim was thus procedurally barred in the state circuit court proceeding on his post conviction motion, and the Missouri Supreme Court never reached the issue because it was only raised in Winfield's pro se brief which was not accepted for filing.  No state court ruled on the merits of the claim, and the only court that considered it was the circuit court which denied it on procedural grounds.

In such circumstances federal courts considering petitions for habeas relief may "look through" the state supreme court decision to the last reasoned decision of the lower state court on that issue. Ylst v. Nunnemaker, 591 U.S. 797, 804 (1991); see also Oxford v. Delo, 59 F.3d 741, 745 (8th Cir. 1995).[6]  In Ylst, the post conviction state court had found that the habeas petitioner defaulted on a claim and the state supreme court affirmed without written opinion.  The petitioner alleged in his habeas action that the federal court could review the claim because the last state court to consider the case had not clearly and expressly relied on the procedural default in rendering its decision.  The Supreme Court disagreed, concluding that when a subsequent state court decision did not touch on procedural default or lift a preexisting

_____

[6] Winfield's reliance on our decision in Clemmons is misplaced, for Clemmons addressed only whether the refusal of the Missouri Supreme Court to accept a pro se filing by a party represented by counsel created a procedural bar preventing habeas review.  It did not consider whether the state supreme court ruling in that case lifted a preexisting procedural bar since there the petitioner had properly presented his habeas claim in his initial Rule 29.15 motion. Clemmons, 124 F.3d at 947.

-15-

procedural default, then "its effect upon the availability of federal habeas relief is nil." Ylst, 591 U.S. at 804 n.3.

The Fifth Circuit applied Ylst in Steward v. Cain, 259 F.3d 374 (5th Cir. 2001), where the state trial court had found a jury instruction claim procedurally defaulted and the appellate court had affirmed with a written opinion as to some issues but not as to the procedural one. The state supreme court then affirmed without opinion. The federal district court treated the first appellate decision as the last reasoned state decision and found that it had disposed of all claims on the merits, thus preserving them for habeas review. The Fifth Circuit reversed, rejecting the petitioner's argument that the last reasoned opinion was that of the state court of appeals, for "[w]hile the court of appeal's opinion was reasoned as to some issues, it was silent, and therefore not reasoned, as to Steward's [jury instruction claim]." Steward, 259 F.3d at 377. The last reasoned opinion was held to be that of the state trial court. Id.

For similar reasons, the last reasoned opinion of the Missouri courts on Winfield's conflict of interest claim was that of the circuit court which found the claim procedurally barred as untimely. Winfield does not dispute that he did not include his conflict claim in his initial filing or that the state circuit court properly ruled his claim defaulted. A finding of procedural default under Rule 29.15 serves as an independent and adequate state ground to bar consideration of an untimely petition, Sloan, 54 F.3d at 1381, and this claim is barred from review in federal court unless Winfield were to demonstrate cause and prejudice or miscarriage of justice. Malone, 138 F.3d at 719. He has not made such a showing and thus his conflict of interest claim is procedurally barred.

The state asks us in the alternative to consider the merits of Winfield's conflict of interest claim. In his reply brief Winfield argues that consideration of the merits is premature and that this court should only concentrate on the procedural question at issue since it is more easily resolved. Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th

-16-

Cir. 1999) (en banc). Winfield's assumption that he is entitled to prevail on the procedural issue and his reliance on <u>Barrett</u> are misplaced. In <u>Barrett</u> the court was not considering a conflict of interest claim and it did not establish a rule requiring courts to abstain from considering the merits. To the contrary, we have the discretion to affirm the district court's decision on any ground supported by the record. <u>Haas v. Kelly Servs., Inc.</u>, 409 F.3d 1030, 1034 (8th Cir. 2005). We believe that the record before us, which includes the original trial transcript, the record of the circuit court's evidentiary hearing, Winfield's habeas petition, and numerous briefs, presents adequate information upon which to base a decision on the merits.

Claim four of Winfield's habeas petition alleged that the conflict of interest involving his attorneys rendered their assistance ineffective. He alleges two conflicts: that he filed a malpractice action against his attorneys prior to trial and that the two attorneys did not get along well which created divided loyalties. To prove ineffective assistance of counsel a petitioner must show both that his counsel's performance was deficient and that the deficiency prejudiced his defense. <u>Strickland</u>, 466 U.S. at 687. In limited circumstances such as where a defendant can show that "an actual conflict of interest adversely affected his lawyer's performance," we will presume prejudice rather than require an affirmative showing by the defendant. <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348 (1980); <u>Covey v. United States</u>, 377 F.3d 903, 906 (8th Cir. 2004).

The <u>Cuyler</u> rule presuming prejudice has not been extended by the Supreme Court beyond cases in which an attorney has represented more than one defendant, <u>Mickens v. Taylor</u>, 535 U.S. 162, 174-75 (2002), and our court has never determined whether it should be applied to other cases. <u>See Covey</u>, 377 F.3d at 907. We need not decide here whether the <u>Cuyler</u> rule extends to cases beyond those involving joint representation, for Winfield's claim fails under either that rule or the traditional <u>Strickland</u> test.

Under Cuyler a defendant is required to show an actual conflict of interest that adversely affected his defense. 446 U.S. at 348. To be successful Winfield would have to identify an actual and demonstrable adverse effect, "not merely an abstract or theoretical one." United States v. Flynn, 87 F.3d 996, 1001 (8th Cir, 1996). To establish that there was a conflict in representation, the defendant must show "that the conflict caused the attorney's choice" to engage or not to engage in particular conduct. Covey, 377 F.3d at 908 (quoting McFarland v. Yukins, 356 F.3d 688, 705 (6th Cir. 2004)). Such a showing requires the defendant to "identify a plausible alternative defense strategy or tactic that defense counsel might have pursued,""show that the alternative strategy was objectively reasonable under the facts of the case," and "establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." Covey, 377 F.3d at 908 (citing Mickens v. Taylor, 240 F.3d 348, 361 (4th Cir. 2001) (en banc), *aff'd* 535 U.S. 162 (2002)).

Although Winfield lodges complaints regarding his lawyers' conduct at trial, specifically the strategy they employed, he has not put forth any reasonable alternative that counsel should have pursued. He argues that counsel attempted to obtain a spontaneous outburst from him at trial as part of their theory that he had "snapped" the night of the murders. Winfield contends they should have instead argued that he had acted out of rage and lacked premeditation. The defense Winfield proposes is not really an alternative to the one presented at trial, for the two defense theories are very similar. Moreover, even assuming that the trial strategy was a poor one, Winfield has failed to show that it was linked in any way to the alleged conflict between the lawyers.

Winfield's reply brief does not address whether the alleged conflict rendered penalty counsel's assistance ineffective, but his habeas petition alleges that Kessler's ill will towards Rosenblum "prevented him from helping with the penalty phase." Winfield's habeas petition contends that the conflict prevented Kessler from ensuring "that the jury was aware of all relevant mitigating evidence" and from ensuring that

he was able to testify during the penalty phase. Winfield does not present any alternative strategy that should have been pursued beyond merely introducing additional evidence of dubious value to his defense. As previously discussed, counsel was not ineffective for failing to call Winfield to testify at the penalty phase, and he has not shown that the decision not to call him resulted from the alleged conflict. The state had strong evidence at trial which was not rebutted: Winfield shot and killed two people and attempted to kill a third. We conclude that Winfield has not demonstrated that he suffered an adverse impact from any conflict of interest.

Winfield relies on our decision in Smith v. Lockhart, 923 F.2d 1314 (8th Cir. 1991), for the proposition that his malpractice suit is enough to establish an actual conflict of interest under Cuyler. In Smith we stated that "[a] federal lawsuit pitting the defendant against his attorney certainly *suggests* divided loyalties," 923 F.2d at 1321 (emphasis added), but nowhere did we indicate that such a suit established an actual conflict. Instead, Smith counsels that whether an actual conflict exists must be evaluated on a case by case basis. Id. at 1321. Nothing in our precedent suggests that the mere filing of a malpractice action is sufficient to create a conflict of interest. We recognized in Smith the dangers of "any holding implying that defendants can manufacture conflicts of interest by initiating lawsuits against their attorneys." Id. at 1321 n.11. The defendant there had objected to the appointment of a particular attorney to represent him prior to trial, alleging a conflict of interest. Id. at 1317. In contrast, Winfield hired both Kessler and Rosenblum to defend him and he did not alert the trial court to any possible conflict of interest, including the lawsuit he had filed in civil court.

Because Winfield has not shown an adverse impact under Cuyler, he is necessarily unable to prove prejudice under the more rigorous Strickland standard typically governing ineffective assistance claims. We therefore conclude that even if Winfield's conflict of interest claim had not been procedurally barred, it would fail on the merits.

-19-

IV.

Finally, Winfield asks this court to expand the certificate of appealability to consider whether to order resentencing and allow presentation of evidence that he acted under extreme emotional disturbance on the night of the murders. He complains that counsel relied on the pretrial medical findings that he was sane and competent to stand trial without delving further into medical issues that might affect his actions. He argues that Dr. Michael Stacey should be allowed to testify as to his diagnosis that Winfield suffers from Adjustment Disorder, which he characterized as "an acute reaction to situational stress." Stacey opined that Winfield was suffering from it at the time of the shooting and attributed it to a number of psychological "stressors" in the weeks and months prior to the shootings.

A certificate of appealability will issue only when an applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Although we have the discretion to expand the certificate of appealability, we exercise that discretion carefully. Watts v. Norris, 356 F.3d 937, 941 (8th Cir. 2004). Granting a certificate of appealability requires a demonstration that "a reasonable jurist" would find the district court ruling on the constitutional claim "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004).

The district court denied this claim because trial counsel had conducted a thorough investigation into the mental condition of his client prior to trial and penalty counsel made an informed decision not to introduce such evidence during the penalty phase. The record establishes that Winfield had been examined by two experts, one from the state and one requested by the defense. Both experts concluded that Winfield was not suffering from a mental or emotional illness at the time of the crimes and informed penalty counsel of their conclusions. Penalty counsel therefore chose not to put on mental health evidence.

Tactical decisions made after a thorough investigation are "virtually unchallengeable" on appeal. Strickland, 466 U.S. at 690-91. Counsel is not required to shop for experts who will testify in a particular way, and penalty counsel's decision not to investigate this issue further was reasonable given the two concurring opinions of different doctors. Sidebottom v. Delo, 46 F.3d 744, 753 (8th Cir. 1995). Moreover, Winfield, the master of his case, Hayes v. Lockhart, 852 F.2d 339, 348 (8th Cir. 1998), told counsel that he did not want them to introduce evidence that he was suffering from an emotional disturbance at the time of the crime. Finally, had Dr. Stacey been called, his testimony would have contradicted Winfield's trial testimony denying that he was "upset, confused or angry" at the time he committed the crimes. Based on the record we do not find the district court's decision "debatable or wrong," Tennard, 542 U.S. at 276, and we therefore deny Winfield's request to expand the certificate of appealability.

## V.

In sum, we conclude that the state court decision on Winfield's ineffective assistance claims was not contrary to federal law or based on an unreasonable determination of the facts and that Winfield's conflict of interest claim was procedurally barred and is also without merit. The district court did not err in denying habeas relief on each of the three grounds for which Winfield was granted a certificate of appealability, and we therefore affirm its judgment.

_____