**Dino EVANS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 28341.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 29, 2007.

Mark A. Grothoff, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Mary H. Moore, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant Dino Evans ("Movant") appeals the motion court's denial following an evidentiary hearing of his Rule 29.15 motion.[1] In his two points of motion court error Movant maintains his counsel was ineffective for failing to call two witnesses. We affirm the findings of fact and conclusions of law of the motion court.

The record reveals that Movant was charged by Amended Felony Information with three counts of the class A felony of robbery in the first degree, violations of section 569.020, and three counts of the unclassified felony of armed criminal action, violations of section 571.015.

A jury trial was held on December 2, 2002. The following evidence was adduced at trial.[2]

At around midnight on September 24, 2000, an employee of the Total Gas Station in Springfield, Missouri, was robbed at gunpoint of the money in his cash register. When police arrived at the gas station moments after the robbery, the employee described the robber as a white male "wearing a plain red baseball cap; [a] red, white, yellow, and blue ... vertical striped shirt; and red shorts that were baggy around the knees; and white shoes and white socks."[3] Shortly thereafter at 12:26 a.m. police were dispatched to the Git–n–Go gas station on Republic Road which had also been robbed at gunpoint. The gas station employee and a customer told police that the robber was a white male "with dark complexion wearing a light colored hat with a white shirt ... [with] red vertical stripes on it [and] ... wearing faded red shorts." At 12:38 a.m. police were again dispatched to a gas station in relation to another robbery. The clerk at the Git–n–Go gas station on Battlefield Road and Fort Street called the police and reported he had been robbed at gunpoint by a "light skinned black male" "wearing a light colored baseball cap, a vertical striped shirt, dark colored shorts with white ankle socks and black tennis

---

1. All Rule references are to Missouri Court Rules (2007) and all statutory references are to RSMo 2000.

2. In this opinion we shall recite only those facts necessary to discuss Movant's postconviction claims. For a full recitation of the facts relating to the underlying charges against Movant, see *State v. Evans*, 122 S.W.3d 731 (Mo.App.2003), in which Movant's underlying convictions were affirmed on direct appeal to this Court.

3. At trial the employee identified Movant as the man who robbed him and he also identified a shirt seized from Movant's home as being "very similar" to that worn by the robber.

shoes...."[4] The robber took some beer and a carton of Marlboro cigarettes in addition to cash from the drawer.

The following afternoon, on September 25, 2000, Officer Chris Barb ("Officer Barb"), Officer Derrick Powell ("Officer Powell"), and Officer Shanholtzer were dispatched to Movant's home on a report "of a possible disturbance for assault." When Officer Barb made contact with Movant, Movant was carrying "a piece of clothing wadded up in his hands" and when Movant set the clothing down Officer Barb noted he had been carrying "a polo styled pullover shirt with some stripes" and a "baseball styled hat." After determining no assault had occurred, Officer Barb departed.

Later, Officer Barb realized the clothing he had seen in Movant's possession matched the description of the clothing from the three robberies which had occurred the previous night. The three officers returned to Movant's home and "placed him under arrest on an unrelated incident." After being advised of his *Miranda*[5] rights, Movant gave the officers consent to search his home. Inside Movant's home the officers recovered Corona beer bottles and an empty Marlboro cigarette carton similar to those stolen from the Git–n–Go on Battlefield Road. The police found the striped shirt Officer Barb had seen earlier "stuffed back behind a furnace into some rafters" along with two baseball hats. Movant was later charged with committing the crimes set out in the aforementioned Amended Felony Information.

At the close of all the evidence, the jury found Movant guilty of three counts of first degree robbery and two counts of armed criminal action.[6] Movant was thereafter sentenced by the trial court as a prior and persistent offender to concurrent prison terms of twenty five years on each count of first degree robbery and fifteen years on each of the two counts of armed robbery.

Movant filed his *pro se* Rule 29.15 motion on April 13, 2004. He was appointed counsel and an Amended Motion to Vacate, Set Aside or Correct Sentence and Judgment was filed on July 13, 2004.

A motion hearing on Movant's motion was held on November 29, 2006. Following the hearing, the motion court denied Movant's request for Rule 29.15 postconviction relief. This appeal by Movant followed.

Appellate review of a motion court's ruling on a Rule 29.15 motion for postconviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law issued in support thereof are clearly erroneous. Rule 29.15(k); *see Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). The findings of the motion court are presumptively valid. *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the appellate court is left with the definite impression that a mistake has been made." *State v. Taylor*, 944 S.W.2d 925, 938 (Mo. banc 1997).

4. This employee identified Movant as the robber from a photo array prior to trial; at trial he identified Movant as the man who robbed him; and also identified the shirt Movant was wearing at the time of the robbery. Also, there was a video surveillance tape of the robbery which was played for the jury during trial and which clearly showed a man wearing a bright striped shirt robbing the store.

5. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6. Movant was found not guilty of armed criminal action in relation to the robbery of the Git–n–Go on Republic Road.

To prevail on a claim of ineffective assistance of counsel, Movant must establish by a preponderance of the evidence that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby. *State v. Simmons,* 955 S.W.2d 729, 746 (Mo. banc 1997); *see Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). To satisfy the performance prong, Movant "must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *Simmons,* 955 S.W.2d at 746. Prejudice exists where there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's ineffectiveness. *Id.* If either the performance or the prejudice prong of the test is not met, then we need not consider the other, and Movant's claim of ineffective assistance of counsel must fail. *Id.*

"To establish ineffectiveness of trial counsel for failing to call a witness, movant must show that the witness could have been located by reasonable investigation, that the witness would testify if called, and that the testimony would provide a viable defense." *Bucklew v. State,* 38 S.W.3d 395, 398 (Mo. banc 2001). Furthermore, to receive relief for trial counsel's failure to call a witness, Movant must show that had the witness testified the outcome may have been different and trial counsel's failure to call the witness was something other than trial strategy. *Bewley v. State,* 151 S.W.3d 151, 153–54 (Mo.App.2004). "The selection of witnesses and evidence are matters of trial strategy, virtually unchallengeable in an ineffective assistance

claim." *Williams v. State,* 168 S.W.3d 433, 443 (Mo. banc 2005). Trial counsel has wide latitude in defending a client in matters regarding trial strategy. *Worthington v. State,* 166 S.W.3d 566, 578 (Mo. banc 2005). "It is virtually impossible to challenge a decision not to call a witness to testify as a matter of trial strategy." *Bewley,* 151 S.W.3d at 154.

■ In his first point of motion court error, Movant maintains the motion court erred in denying his request for relief "because a review of the record leaves a definite and firm impression that [Movant] was denied effective assistance of counsel...." Movant asserts his trial counsel was ineffective "by failing to call as a witness Carrie Wilhelm, whose testimony would have provided [Movant] with an alibi in defense of the charges against him." Movant maintains he was prejudiced by his counsel's failure to "call Carrie Wilhelm as a witness in that the jury was not given the opportunity to consider her testimony that provided [Movant] an alibi," and if the jury had considered her testimony "a reasonable probability exists that the result of [Movant's] trial would have been different."

At the motion hearing, Carrie Wilhelm ("Ms. Wilhelm"), Movant's former wife, testified that she and Movant were married in 1999 and were divorced two years later. She noted that the investigation in this matter took place while she and Movant were separated and the trial occurred shortly after their divorce was finalized. Ms. Wilhelm said she was never contacted by anyone in relation to the criminal case against Movant, but that she had "contacted the lead investigator shortly after [Movant] was questioned to clarify where he was" on the evening of the robberies.[7]

---

7. A memorandum was created by Ken Silby, a former investigator for the Missouri Public Defender's Office, following a telephone interview with Ms. Wilhelm. The "Memo to Case

Ms. Wilhelm also related at the motion hearing that she "contacted every one of the attorneys that [Movant] had" and none of them ever called her back. She stated his trial counsel, Kent Hall ("Mr.Hall"), "notified [her] [Movant] didn't want [her] help" and "didn't need [her] to testify."

Ms. Wilhelm also testified that on the evening of the robberies she was working at the Player's Club in Springfield and on that evening Movant came into the bar. She stated he sat "at the table to the right of [her], drinking and listening to music" and "[h]e was there until almost before close, 12:30 or so." She stated Movant had been drinking and could not drive himself home so she arranged for a friend, Chris, to drive Movant home. She also related she did not know Chris's last name and he was "one of [her] customers at the bar." She stated she would have testified at trial if she had been asked to testify.

In his testimony at the motion hearing, Movant stated that he wanted Ms. Wilhelm to testify "[b]ecause that placed [him] somewhere else at the time of three of the robberies." He related that at the time of trial he did not have much contact with Ms. Wilhelm because he "had cheated on [her] before the divorce and everything." He stated he had not had contact with Ms.

Wilhelm since September 19, 2001. He also testified that he never told Mr. Hall, his trial counsel, not to contact Ms. Wilhelm and that he told Mr. Hall he "didn't know what she was doing but [he] never once told him not to call her." He testified he told Mr. Hall he "didn't know" what Ms. Wilhelm would say and "didn't know what she would do.... [He] didn't know if she was divorced. [He] didn't know what she was doing or how she would be." Movant also stated Ms. Wilhelm might not have agreed to "testify at all," but he was not sure. He acknowledged that if he "didn't know that Ms. Wilhelm would help ..." him it might have been "wise to not have her as a witness...."

Mr. Hall testified at the motion hearing that he talked with Movant "on several occasions and discussed the case, the evidence against him and strategies for the defense." Mr. Hall stated his "strategy was the defense theory of misidentification." He testified that chronologically the memorandum relating to Ms. Wilhelm's statements was made on March 14, 2001, but he did not get Movant's case until July of 2001. He stated he did not recall reviewing the memorandum when he took the case, but that he must have done so

file," which was entered into evidence at the evidentiary hearing, stated verbatim:
> [Ms. Wilhelm] was bartending at the Player's Club on the evening of September 24, 2000. She knows what time [Movant] arrived and left because they have a 5 yr old daughter and [Ms. Wilhelm] watched the clock so she would know when the daughter would be picked up. [Movant] arrived at 10:30 pm. He drank a lot and got falling down drunk. His waitress was Chastity George (?). [Ms. Wilhelm] had Chastity stop serving [Movant] alcohol later in the evening because he was so drunk. Carolyn Turner, the owner saw [Movant] there that night. Carolyn was drinking and [Ms. Wilhelm] is not sure how much she will remember.

> There were police officers in the parking lot. The people in the bar thought they were there to catch drinking drivers. [Ms. Wilhelm] did not find out there had been a robbery until later when the officers came into the bar. Concerned about [Movant] drinking so much and getting caught driving, [Ms. Wilhelm] asked a guy named Chris to drive him home. They left about 12:30 am. [Ms. Wilhelm] will attempt to contact Chris and ask him to call me.
> [Ms. Wilhelm] has not worked at Player's Club since November 2000. She will attempt to contact Carolyn, Chastity and any others and have them contact me.

because he discussed with Movant "early on in the case" about presenting Ms. Wilhelm "as an alibi witness." He related that at that time he felt "[a]n alibi would be very consistent with a misidentification defense. There's nothing inconsistent about those two." Mr. Hall also testified that when he was preparing Movant's case for trial, he was "unable to locate [Ms. Wilhelm]. She was not at the same address. The phone number [he] had wasn't good. She had never, of her own initiative contacted [his] office when [he] was [Movant's] attorney." He stated that when he asked Movant about Ms. Wilhelm, Movant "told [him] that she was not with him now, that they were not together. She would not help him if [he] called her as a witness." Mr. Hall also related he "wrote her off" as a potential witness initially because "she was his wife and relatives are always suspect in terms of potential bias when they become alibi witnesses...." He opined, "based upon [his] experience, if you're going to present an alibi defense, it should be an air tight one that will definitely hold up ... an alibi that doesn't hold up will sink your ship." Ultimately, Mr. Hall did not call Ms. Wilhelm as a witness because he believed she was not going to help Movant and might actually hurt Movant's case.

■ In the present matter, Movant has not clearly shown that Mr. Hall's failure to call Ms. Wilhelm was not sound trial strategy. *Bewley*, 151 S.W.3d at 154. " 'When defense counsel believes a witness' testimony would not unequivocally support his client's position, it is a matter of trial strategy not to call h[er], and the failure to call such witness does not constitute ineffective assistance of counsel.' " *Bewley*, 151 S.W.3d at 154 (quoting *Winfield v. State*, 93 S.W.3d 732, 739 (Mo. banc 2002)). In light of the mixed impact of Ms. Wilhelm's potential testimony, the fact that she could not be located at the time of trial, and the fact that her testimony did not specifically support Movant's defense strategy of misidentification, we cannot say the motion court erred in finding that Mr. Hall was not ineffective in not having called her as a witness. Additionally, there is no probative evidence that had Ms. Wilhelm been called to testify the outcome would have been different. *See Bewley*, 151 S.W.3d at 154. The motion court did not err in denying Movant's Rule 29.15 motion. Point One is denied.

■ Movant's second point relied on maintains the motion court erred in denying his Rule 29.15 motion because his counsel was ineffective in failing to call Officer Derrick Powell, "whose testimony that when he detained [Movant], he saw and found nothing in [Movant's] possession would have contradicted the testimony of ... [Officer Barb] that [Movant] was carrying a striped polo shirt and ball cap in his hands, and would have supported [Movant's] defense of misidentification." Movant asserts "[h]ad Officer Derrick Powell been called as a witness, a reasonable probability exists that the outcome of [Movant's] trial would have been different."

At the motion hearing, Officer Derrick Powell ("Officer Powell") testified that on September 25, 2000, he was employed as an officer with the Springfield Police Department and he had accompanied Officer Barb to Movant's home on that date. He related he arrived at Movant's home to investigate a possible assault and was concerned "there might be weapons present at the scene." He testified he did not recall if Movant had "anything on his person" at that time. He noted that he did not write in his police report whether he found anything on Movant's person. He stated that he later searched Movant's residence and found "[a striped] shirt and cap that was

shoved, if you will, into the rafters of the ceiling to the basement." Officer Powell stated he would have testified at Movant's criminal trial had he been asked to do so.

Movant testified that he had asked Mr. Hall to call Officer Powell as a witness "[b]asically to say that he never saw that [striped] shirt in my possession. [Officer Powell] was the first officer to make contact with [him] that day."

In his testimony, Mr. Hall related that the problem with Officer Powell testifying is that it "would have brought in evidence of prior bad acts and unrelated, uncharged misconduct, which [he] definitely did not want to come into trial ... so that was [his] strategic choice." Mr. Hall stated he was particularly concerned about bringing in "[a]ccusations of possession of firearm[s], burglary ... [Movant's] use or misuse of a company truck and accusation[s] that [Movant] had burglarized a coworker's home and stolen guns." Mr. Hall also testified he would not "put on [the stand] a police officer who has ... knowledge of other bad acts of [his] client that could possibly open the door to that evidence. [He] just didn't feel that was a point that was going to rebut the essential fact." He felt that Officer Powell's testimony did not negate the defense of misidentification, and he "didn't feel Officer Powell's testimony was a very important point. You have two officers who had a minor inconsistency about what [Mr. Hall] considered to be a minor fact."

■ We are of the view that, at best, Officer Powell's testimony might have been used to impeach the credibility of Officer Barb, who testified at trial that Movant was holding a striped shirt when they arrived at his home. However, mere failure of trial counsel to impeach a witness does not entitle a movant to postconviction relief where the impeachment does not provide a viable defense and would not

change the outcome of trial. *Barnum v. State*, 52 S.W.3d 604, 608 (Mo.App.2001). Saliently, Officer Powell's testimony would not rebut the fact that the striped shirt and hat were recovered from Movant's home, particularly in light of the fact that it was Officer Powell who found the items hidden in Movant's basement. Moreover, as related by Mr. Hall, Officer Powell's testimony might have opened the door to evidence of certain bad acts and other crimes committed by Movant in that Officer Powell was investigating Movant on a burglary charge among other things. Mr. Hall testified at the motion hearing that the risk of prejudice from the introduction of the bad acts evidence would have hurt Movant's case a great deal more than it would have helped in showing a slight inconsistency in the testimony of two officers on a collateral matter. Mr. Hall also related he chose not to call Officer Powell based on trial strategy and we agree with the motion court that such failure to call Officer Powell did not constitute ineffective assistance of counsel. *See Bewley*, 151 S.W.3d at 154. The motion court did not clearly err in denying postconviction relief to Movant for his trial counsel's purported failure to call Officer Powell. *Id.* Point Two is denied.

The findings of fact and conclusions of law of the motion court are affirmed.

RAHMEYER, J., and McBETH, SR. J., concur.