Tara Y. MCCLANAHAN,
Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

No. SD 29029.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 10, 2009.

---

Alexandra E. Johnson, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel N. McPherson, Jefferson City, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Tara Y. McClanahan ("Movant") was convicted of arson in the first degree under section 569.040, attempted murder in the second degree under sections 565.021 and 564.011, and burglary in the first de-

gree under section 569.160.[1] On direct appeal, this Court affirmed Movant's convictions and sentences. *State v. McClanahan*, 202 S.W.3d 64 (Mo.App. S.D.2006).

Movant filed a *pro se* Motion to Vacate, Set Aside or Correct the Judgment or Sentence pursuant to Rule 29.15; her appointed counsel filed an amended motion. After an evidentiary hearing, the motion court issued findings of fact and conclusions of law denying Movant's requests for post-conviction relief. This appeal followed.

On review of the lower court's ruling on a Rule 29.15 motion, we must affirm the ruling unless the findings of fact and conclusions of law reached by the lower court are clearly erroneous. *State v. Link*, 25 S.W.3d 136, 148 (Mo. banc 2000). The lower court's findings of fact and conclusions of law are presumed to be correct, unless a review of the entire record leaves this Court with a definite and firm impression that a mistake has been made. *Id.* at 148–49. Moreover, this Court must defer to the motion court's determination of witness credibility. *State v. Dunmore*, 822 S.W.2d 509, 512 (Mo.App. W.D.1991).

For a claim of ineffective assistance of counsel to prevail, a two-part test must be satisfied. Movant must show that her trial counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances and Movant must establish prejudice by showing a reasonable probability that but for counsel's errors, the results of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Trial counsel will not be found to have rendered ineffective assistance when counsel's conduct involved the use of reasonable discretion in a matter of trial strategy. *Weekley v. State*, 265 S.W.3d 319, 324 (Mo.App. S.D.2008).

Movant presents four points challenging the effectiveness of her trial counsel; the first three points challenge the failure to call four different witnesses and the last challenges the failure to object to supposedly inconsistent verdicts. A detailed statement of the facts is not necessary and we shall provide only a brief recitation of the necessary facts and later present any additional relevant facts with each point on appeal.

Movant and her boyfriend, Mark Messmer, had been passing checks drawn on her mother's account; Movant's mother ("Victim") intended to go to the bank to investigate the overdrawn account, returned checks and accompanying charges. Movant and a friend, Juanita Holderbaugh, drove to Victim's home and attempted to kill Victim by setting her house on fire by lighting the curtains with a candle. Victim escaped even though she was kicked in the head by someone wearing men's shoes as she tried to slide across the floor to safety. She was able to rouse her neighbors and was taken to the hospital for treatment.

James Amann, an investigator for the Missouri Division of Fire Safety, investigated the fire and testified at Movant's trial. On the night of the fire, it was not immediately apparent to him that the fire was arson. He could not determine the cause of the fire at that time because he had not yet had the opportunity to talk with Victim and there were many things at the scene that he was "questioning" as the cause of the fire. He specifically had questions about cigarettes and ashtrays,

---

1. All references to statutes are to RSMo 2000, and all rule references are to Missouri Court Rules (2008), unless otherwise specified.

an oil or kerosene lamp, and an electrical lamp on the night stand. He received a call from someone at the police department to investigate the fire further and was told that the department had received information that the fire was set deliberately. Mr. Amann participated in an interview of Ms. Holderbaugh during which she wrote a statement that she and Movant set the bed and curtains on fire with a candle. He testified that everything Ms. Holderbaugh told him about how the fire was set was consistent with what he saw at the scene and what he later learned from Victim.

■■ Movant's first three points claim the trial court erred in failing to call four witnesses. To prevail on her claims, Movant must show that "the witness could have been located by reasonable investigation, that the witness would have testified if called, and that the testimony would have provided a viable defense." *Tinsley v. State*, 258 S.W.3d 920, 925 (Mo.App. S.D.2008). Movant must also demonstrate that had the witness testified, the outcome of the case could have been different and that counsel's failure to call the witness was not a strategic decision. *Id.* Unless clearly shown otherwise, counsel's decision not to call a witness is deemed to be trial strategy. *Winfield v. State*, 93 S.W.3d 732, 739 (Mo. banc 2002). It is a matter of trial strategy not to call a witness when counsel believes the witness' testimony would not unequivocally support his client's position, and the failure to call such witness does not constitute ineffective assistance of counsel. *Id.*

■■ The first witness that Movant alleges should have been called was Hurschel Alexander, who was hired by an insurance company to investigate the fire. Mr. Alexander testified at the evidentiary hearing that at the time of his investigation, he did not find anything that led him to believe there had been an incendiary fire, which is a fire that was deliberately set. He had concluded that the most probable cause of the fire was a failure in an electrical cord that was pinched under the left headboard of the bed; however, it was possible that the fire could have been caused by something other than electrical failure. He did not find any accelerant, device, or ignitable liquid, but no accelerant would have been left behind if the fire had been started by a candle. Mr. Alexander testified that he talked with Mr. Amann and that his investigation results "pretty much" matched Mr. Amann's conclusion at the time that they spoke that the cause of the fire was undetermined.

Movant argues that the State relied heavily on Mr. Amann's testimony that his observations of the fire were consistent with the account given by Ms. Holderbaugh, therefore, if Mr. Alexander had testified to his determination that the fire was probably caused by a crimped electrical cord, then a different theory of defense could have been developed or the State's theory could have been undermined. We disagree.

Mr. Alexander's testimony would not have been inconsistent with Mr. Amann's testimony. After Mr. Alexander did his investigation and Mr. Amann did his initial investigation, both "pretty much" concluded from the scene that the cause of the fire was undetermined. Mr. Alexander believed that the most probable cause was an electrical failure, but he also testified that the fire could have been caused by something other than electrical failure. After his initial investigation, Mr. Amann also had not made a determination as to what probably caused the fire and testified to that fact. His conclusion simply parallels Mr. Alexander's proposed testimony. It was only after further investigation and speaking with Ms. Holderbaugh and Victim that Mr.

Amann determined the cause of the fire was a candle. Because Mr. Alexander's testimony did not contradict Mr. Amann's testimony, it would not have undermined the State's theory that the cause of the fire was a candle. Movant does not propose that Mr. Alexander could testify that the fire was not started by a candle, nor was there any evidence that Mr. Alexander had the opportunity to speak with Ms. Holderbaugh. Movant was not prejudiced by the failure to call a duplicative witness.

Furthermore, Movant's position at trial was not that no arson had been committed but rather that Movant was not involved in setting the fire. Mr. Alexander's testimony, therefore, would not have supported Movant's position. To argue that the fire was accidental contradicted the evidence that Ms. Holderbaugh confessed to the police that she and Movant set the fire and the evidence that Victim had been kicked by someone wearing men's shoes while she was trying to exit the home. Although Movant contends that the testimony would have established an alternate theory that the fire was accidental and that that alternate theory would not have hurt her position that the arson was committed by someone else, trial counsel's decision not to pursue it was a matter of trial strategy. Movant has not shown that the outcome of her trial could have been different had Mr. Alexander testified and has also failed to show that counsel's decision not to call him as a witness was not trial strategy. Point One is denied.

Movant argues in her second point that trial counsel was ineffective for failing to call Movant's daughter, Brittany, and Movant's son, Rodney, as witnesses because they would have testified that they were home with Movant at the time the fire was set and, therefore, would have supported an alibi defense. Movant's son, Rodney, was eleven or twelve years old on the night of the fire. Rodney testified at the evidentiary hearing that he was asleep and awoke to find Movant watching television. He talked to Movant for a little while and then went back to bed, but Movant later woke him up to tell him about the fire. After describing this sequence of events, Rodney was asked, "do you remember approximately what time this would've been?" He responded, "I guess about 1:00 or 2:00." He also testified that he was not certain how long he had been asleep before Movant woke him up to tell him about the fire.

Movant's daughter, Brittany, was fifteen years old on the night of the fire. Brittany testified at the evidentiary hearing that she only remembered a little bit about the incident because she was asleep most of the night. She did not remember what time she went to bed that night, but she said that her usual bed time back then was 10:00 or 10:30 p.m. She testified that she was asleep when she heard the phone ring at approximately 2:30 in the morning. She heard Movant in the hallway talking on the phone and Movant sounded upset. Brittany then went back to sleep. Brittany testified that she was not sure if Movant was home during the time between when she went to bed and when she was awakened by the phone ringing.

Viewed in the light most favorable to the verdict, the evidence at trial indicated that Movant and Ms. Holderbaugh left for Victim's home at approximately 1:30 a.m. and were back home by 2:30 a.m. Without determining whether counsel should have called Movant's children, we find that his failure to do so did not prejudice Movant because neither child's testimony would have definitely placed Movant at home between 1:30 and 2:30 a.m. Brittany could not definitely place Movant at home because she testified that she was asleep from about 10:00 or 10:30 p.m. until 2:30

a.m. Rodney testified that he woke up, talked to Movant, and went back to bed. He woke up again when Movant told him about the fire. According to Rodney, this sequence of events took place at approximately 1:00 or 2:00 a.m. It is not clear whether Rodney meant it was around 1:00 or 2:00 a.m. that he first awoke and spoke to Movant or that it was around 1:00 or 2:00 a.m. when he woke up the second time and Movant told him about the fire. Either way, his testimony does not definitely place Movant at home between 1:30 and 2:30 a.m. Because the testimony of Movant's children would not have unequivocally supported Movant's position that she was home when the fire was set, Movant cannot show prejudice in the failure to call either as a witness. Point Two is denied.

▮ In her third point, Movant alleges that trial counsel was ineffective for failing to call her brother, Ronald Garmon, as a witness because he could have supported her alibi defense by testifying that he was on the phone with her during the time that the fire was set. Mr. Garmon testified at the evidentiary hearing that he and Movant made about five or six phone calls to each other between 10:30 p.m. and 2:30 a.m. on the date of the fire. Mr. Garmon testified that he called Movant at a landline number at her house. According to Mr. Garmon, the last call between him and Movant took place approximately fifteen minutes before he received a call from Mr. Messmer who told him that Victim's house was on fire.

Although that portion of Mr. Garmon's testimony would have been helpful to Movant, the information gleaned from cross-examination was not. Mr. Garmon was confronted with a written statement that he had provided to the police on July 9, 2004. The first part of the statement read, "My sister came to me, the day before the fire, scared to death. I asked

her what was wrong. She said she was— had been taking money out of [Victim's] account, and now [Victim] wants to go to the bank to talk to the lady in charge." Regarding Movant's actions after the fire, Mr. Garmon wrote in his statement, "[Movant] made an offhanded comment like, quote, how in the hell did she get out of there, close quote. I said I didn't know, but I could tell she meant something by that but didn't press it." Later in the statement, he also wrote, "I suspected she did something then, but just couldn't believe it."

Trial counsel testified that he made a strategic decision not to call Mr. Garmon as a witness because he was concerned that Mr. Garmon would be cross-examined about his written statement to the police. Trial counsel testified that Victim was going to testify that she saw a man's boots as she was trying to get out of the house. Trial counsel explained that Movant's position at trial was that Mr. Messmer committed the arson, not Movant. Trial counsel's strategy was to show that Mr. Messmer's motive for the arson was that he had been forging checks on Victim's account. Trial counsel believed that the problem with calling Mr. Garmon as a witness was that the line of his written statement where he says Movant admitted to taking money from Victim would have given Movant the same motive that trial counsel was trying to show Mr. Messmer had for committing the arson.

Movant has failed to demonstrate that trial counsel's decision not to call Mr. Garmon as a witness was not a matter of trial strategy. Had Mr. Garmon testified, he probably would have been confronted with his written statement to the police. Part of the statement regarding Movant taking money from Victim's account could have strengthened the State's theory that Movant committed the arson because she had

been stealing from Victim. It is entirely possible that the State would have pursued the portion of the written statement where Mr. Garmon stated his suspicion that Movant "did something," which would not have helped Movant's defense. Because trial counsel's decision not to call Mr. Garmon as a witness was a use of reasonable discretion in a matter of trial strategy, Point Three is denied.

■ Movant contends in her fourth point that trial counsel was ineffective for failing to object to inconsistent verdicts for first-degree burglary and first-degree arson. She argues that the verdicts were inconsistent because burglary requires proof of a purposeful intent to commit a crime, while the underlying object crime of arson alleged reckless action. According to Movant, the proof was not sufficient to show purposeful intent because it is not possible to form a purposeful intent to commit a reckless act.

Looking at the elements of both first-degree burglary and first-degree arson, we find that the verdicts were not inconsistent. Section 569.160.1, the first-degree burglary statute, provides:

> A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:
>
> (1) Is armed with explosives or a deadly weapon or;
>
> (2) Causes or threatens immediate physical injury to any person who is not a participant in the crime; or
>
> (3) There is present in the structure another person who is not a participant in the crime.

Section 569.040.1(1) provides that one way a person can commit first-degree arson is if she "[k]nowingly damages a building or inhabitable structure, and when any person is then present or in near proximity thereto, by starting a fire or causing an explosion and thereby recklessly places such person in danger of death or serious physical injury."

Thus, the crime of first-degree burglary requires that the person knowingly enters the building with a purposeful intent to commit a crime whereas the crime of first-degree arson requires the knowing act of damaging a building by starting a fire or causing an explosion and, when a person is present, the knowing start of the fire recklessly places a person in danger of death or serious physical injury. In other words, the State only had to prove that Movant knowingly entered the building for the purpose of committing the crime (of arson, in this case) for conviction of first-degree burglary when another nonparticipant was present whereas, in the first-degree arson charge, the State had to prove that Movant knowingly started the fire and by starting the fire, because a person was present, Movant was reckless in starting the fire. The verdicts, therefore, were not inconsistent, and any objection by trial counsel would have been meritless. Trial counsel is not ineffective for failing to make a meritless objection. *Middleton v. State*, 103 S.W.3d 726, 741 (Mo. banc 2003). Thus, Point Four is denied.

The judgment is affirmed.

LYNCH, C.J., and BURRELL, P.J., concur.