

# In the Missouri Court of Appeals
## Eastern District
### DIVISON FOUR

| | | |
|---|---|---|
| JEFFERY PLACE, | ) | No. ED100827 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | Jefferson County |
| vs. | ) | |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Gary P. Kramer |
| | ) | |
| Respondent. | ) | Filed: December 9, 2014 |

### *Introduction*

Jeffery Place (Movant) appeals the judgment of the Circuit Court of Jefferson County denying his Rule 29.15 motion for post-conviction relief following an evidentiary hearing. Movant claims that the motion court erred in denying his claims that trial counsel was ineffective in: (1) advising him not to testify in his own defense; and (2) failing to call two defense witnesses. We affirm.

### *Factual and Procedural Background*

Viewed in the light most favorable to the verdict, the evidence at trial revealed the following: On September 8, 2007, while Movant drove his wife Monica Place home from a party, Movant punched her in the mouth three times and slammed her head into the dash board. He then "put his hand around [her] neck and choked [her]" until she "passed out."

When Movant and Ms. Place arrived home, Ms. Place went inside to call her cousin then returned to the front porch. Movant exited the garage wearing a bullet-proof vest, holding a

handgun and AK-47, and carrying another handgun in a holster. Ms. Place ran to her van and called 911. When Movant ordered her out of the van, she complied and asked him to "put down the guns." Movant placed the guns on the porch and pushed Ms. Place across the yard.

At this point, Deputy Carl Beier arrived. Ms. Place ran toward Deputy Beier and told him that Movant had loaded weapons on him, and continued running, crossing the yard of her neighbor, William Graham. Seeing Ms. Place in his yard, Mr. Graham walked to Movant's house to inquire about what was happening. Mr. Graham took Movant's AK-47 from him and returned home.

Deputy Beier retrieved his shotgun from the trunk of his patrol vehicle and found "an area of cover" behind a tree. When Deputy Beier ordered Movant not to move, Movant replied "who the fuck do you think you are, Superman" and walked to, and entered, Mr. Graham's house to retrieve the AK-47. Movant exited the house with the AK-47, and Deputy Beier continued to order Movant to the ground. Movant refused and "began firing[,]" causing bullets to hit the tree in front of Deputy Beier. Deputy Beier returned fire "a couple of times" in between Movant "shooting the bursts at [him]." Then Movant "shot at [him] in a fully automatic mode" and "advanced" toward Deputy Beier. Deputy Beier fired his shotgun again, hitting Movant in the head.

The State charged Movant with assault on a law enforcement officer in the first degree, armed criminal action, domestic assault in the second degree, and unlawful possession of a weapon. At trial, the State presented the testimony of several witnesses, including Henry Ruesche, Movant's neighbor. Mr. Ruesche stated that he was at home when he heard an AK-47 fired. He knew it was an AK-47 based on his ten years of experience in the Air Force. He said that he looked out his window and saw Movant walk and "disappear" behind his garage. Mr.

2

Ruesche testified that he then heard more gunshots, specifically stating that "[t]he first five rounds that I counted were semi-auto, then it went to two bursts of fully automatic fire."

The State asked Mr. Ruesche if he heard a second type of weapon after the AK-47 and Mr. Ruesche responded that he did. He explained that "[i]nitially I thought it was pistol fire" but after considering the location of where the gun was fired, "it muffled it quite a bit, what I thought was pistol fire, once I saw the officer stepping out of the woods was his shotgun." When asked which gun was fired first, Mr. Ruesche answered that he first heard the AK-47.

Mr. Graham, Movant's neighbor, also testified on behalf of the State. Mr. Graham testified that after he returned to his house with Movant's AK-47, he heard three or four shotgun or rifle shots and then Movant entered his house and retrieved the AK-47. Mr. Graham testified that after Movant left, he heard "some shots, like automatic shots" and then "heard it open up, like fully automatic."

Movant presented the testimony of his neighbor, Donna Mischanco. She testified that she was at home during the incident and "heard this loud sound like everything was kind of falling down on the walls." Trial counsel asked Ms. Mischanco if she heard anything prior to the "loud boom" and she replied, "No, afterwards I did. It sounded like firecrackers."

During the instruction conference, the trial court stated that Movant chose not to testify and noted that trial counsel did not request a jury instruction with respect to his right not to testify. Trial counsel responded that he did not request the instruction as a matter of trial strategy because he did not want to highlight to the jury the fact that Movant did not testify. The trial court stated that it would "approve the not giving of that [instruction] under these circumstances" and did not include it among its instructions to the jury.

3

At the end of Movant's trial, the jury found him guilty on all counts. The trial court sentenced Movant to life imprisonment for assault on a law enforcement officer, seventy-five years' imprisonment for armed criminal action, and seven years' imprisonment for unlawful possession of a firearm to run consecutive to one another and concurrent to a sentence of four years' imprisonment for domestic assault. This court affirmed Movant's judgment and sentence. State v. Place, 327 S.W.3d 627 (Mo.App.E.D. 2010).

Movant filed a Rule 29.15 motion for post-conviction relief, which counsel later amended. In his motion, Movant alleged, among other things, that trial counsel was ineffective in: (1) inducing him to unknowingly and involuntarily waive his right to testify by informing him that the jury would be instructed that it could not consider his not testifying in determining his guilt; and (2) failing to investigate and call as witnesses Sam Mischanco and Harold Glamann to testify that they heard gunshots before hearing "rapid fire" because this testimony would have supported his theory that Deputy Beier was the initial aggressor and that Movant was not trying to kill him.

The motion court held an evidentiary hearing, at which Sam Mischanko, Harold Glamann, trial counsel, and Movant testified.[1] The motion court denied Movant's motion, finding that trial counsel was not ineffective because: (1) Movant's testimony that he waived his right to testify only because trial counsel told him the trial court would instruct the jury regarding Movant's right to refrain from testifying was not credible, and trial counsel's "decision not to request the right not to testify instruction was clearly a matter of trial strategy"; and (2) neither

---

[1] The trial transcript spells Donna Mischanco's name with a "c" while the evidentiary hearing transcript spells her husband Sam Mischanko's name with a "k." We use the spelling of the names as used in each transcript.

4

Mr. Mischanko's nor Mr. Glamann's testimony indicated that Deputy Beier fired the first shots and thus did "not support Movant's theory that Deputy Beier fired first." Movant appeals.

### *Standard of Review*

Our review of a denial of a motion for post-conviction relief is limited to determining whether the trial court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). Findings and conclusions are erroneous if, after reviewing the entire record, we are left with the definite impression that a mistake has been made. Zink v. State, 278 S.W.3d 170, 175 (Mo. banc 2009). In making this determination, we presume that the motion court's findings are correct. Id.

### *Discussion*

To prevail on a claim of ineffective assistance of counsel, a movant must show by a preponderance of the evidence that: (1) counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances; and (2) counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the performance prong, a movant must overcome a strong presumption that counsel's conduct was reasonable and effective trial strategy. Zink, 278 S.W.3d at 175. A movant establishes prejudice by demonstrating that but for counsel's poor performance, there is a reasonable probability that the outcome of the trial would have been different. Strickland, 466 U.S. at 694. A movant must establish both the performance and prejudice prongs of the ineffective assistance of counsel test. Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987). If a movant fails to satisfy one prong, we need not consider the other. Id.

In his first point, Movant claims that the motion court erred in denying his claim that trial counsel was ineffective in advising him not to testify at trial. Specifically, Movant asserts that he

5

did not knowingly and voluntarily waive his right to testify because trial counsel misinformed him that if he did not testify, the trial court would instruct the jury regarding his right to refrain from testifying. He further asserts that a trial strategy that permanently precludes a request for a jury instruction regarding a defendant's right not to testify is not reasonable. Movant contends that if he had known that trial counsel was not going to request the instruction, he would have testified and the outcome of trial would have been different. The State counters that the motion court did not err because Movant failed to present credible evidence to prove his claim that counsel's misinformation caused him not to testify.

Our review of the record reveals the following regarding Movant's decision not to testify: At the evidentiary hearing, trial counsel testified that he discussed with Movant his right to testify and informed Movant that the decision was "his and his alone." He stated that after his discussions with Movant, Movant "felt that he shouldn't" testify. Trial counsel explained to Movant that the trial court could instruct the jury not to hold against him his decision not to testify but told him that "it's my practice not to [request that instruction], because I think it highlights it to the jury." Trial counsel recalled that Movant "seemed to be in agreement with what I was saying" and never asked trial counsel to request the instruction. Trial counsel denied telling Movant that he would request the instruction.

Movant also provided testimony about his decision not to testify. Movant explained that he "absolutely wanted to testify" but waived his right to do so after speaking to trial counsel. He stated that trial counsel told him that the trial court would instruct the jury that it could not draw adverse inferences from his decision not to testify and that Movant did not need to testify because the State had not proved its case. Movant also testified that trial counsel told him that he would request the jury instruction regarding his decision not to testify.

6

Faced with conflicting testimony regarding Movant and trial counsel's discussion about Movant's right to testify, the motion court had to determine each witness' credibility and the weight to be given the testimony. See e.g., Kenney v. State, 46 S.W.3d 123, 128 (Mo.App.W.D. 2001). In its judgment, the motion court rejected Movant's explanation that he waived his right to testify based on trial counsel's assurance that the jury would be instructed not to consider his lack of testimony, explaining that "[w]hen asked when he found out that the right not to testify instruction wasn't given[,] [Movant] said about a year later…. In point of fact, Movant was in the Courtroom when the Court read the instructions to the jury and that instruction was not one of them." The motion court also stated that because, during the instruction conference, trial counsel explicitly stated he did not wish to offer an instruction on Movant's right not to testify, the court did "not believe that [Movant's] version of the conversation with his attorney is accurate." The court determined that "[Movant's] testimony with regard to this issue is not credible."

The motion court "is free to believe or disbelieve the testimony of any witness, including that of the [m]ovant." Hurst v. State, 301 S.W.3d 112, 119 (Mo.App.E.D. 2010). We defer to the motion court's superior opportunity to judge the credibility of witnesses. State v. Silas, 885 S.W.2d 716, 722 (Mo.App.W.D. 1994).

Because we find sufficient support in the record for the motion court's determination that trial counsel did not mislead Movant to waive his right to testify by informing him that he would request an instruction regarding his decision not to testify, Movant did not satisfy his burden of demonstrating that counsel's performance was deficient.[2] See e.g., Williams v. State, 168

---

[2] Movant alleges that he was prejudiced because he did not testify, and had he testified, there is a reasonable probability the outcome would have been different. Because the motion court did not find credible Movant's testimony that he waived his right to testify based on trial counsel's

7

S.W.3d 433, 444 (Mo. banc 2005). Accordingly, we conclude that the motion court's denial of Movant's ineffective assistance claim was not clearly erroneous.[3] Point denied.

In his second point, Movant claims that the motion court erred in denying his claim that trial counsel was ineffective in failing to call Mr. Mischanko and Mr. Glamann as defense witnesses. Movant contends that their testimony that they heard single gunshots followed by "rapid fire" would have supported the defense theories of lack of intent and self-defense. Movant asserts that he was prejudiced because Mr. Mischanko's and Mr. Glamann's "testimony would have warranted a self-defense instruction" and there is a reasonable probability that the outcome would have been different. The State counters that the motion court did not err because the witnesses' testimony: (1) was cumulative to Ms. Mischanco's trial testimony; and (2) did not establish that Deputy Beier fired his gun first.

To prove ineffective assistance of counsel for failure to call a witness, a movant must show that: (1) defense counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have provided a viable defense. Hutchinson v. State, 150 S.W.3d 292, 304 (Mo. banc 2004). Additionally, a movant must show that defense counsel's decision not to call the witnesses was not a matter of trial strategy. Gennetten v. State, 96 S.W.3d 143, 151 (Mo.App.W.D. 2003). "[Defense] counsel's decision not to call a witness is

___

alleged assurance about the jury instruction, we need not consider Movant's allegation of prejudice. See e.g., Bradley v. State, 292 S.W.3d 561, 565 (Mo.App.E.D. 2009).
[3] In the argument section of his brief, Movant asserted that trial counsel's strategy to always refrain from requesting an instruction regarding a defendant's right not to testify was not reasonable. In his point on appeal, however, Movant asserted that trial counsel was ineffective for inducing him to unknowingly and involuntarily waive his right to testify. "We do not consider arguments and issues raised in the argument portion of the brief that are not encompassed by the points relied on." Helmig v. State, 42 S.W.3d 658, 666 (Mo.App.E.D. 2001).

presumed to be trial strategy unless otherwise clearly shown." Id. (quoting Bucklew v. State, 38 S.W.3d 395, 398 (Mo. banc 1945). "When defense counsel believes a witness' testimony would not unequivocally support [a movant's] position, it is a matter of trial strategy not to call him, and the failure to call such witness does not constitute ineffective assistance of counsel." Winfield v. State, 93 S.W.3d 732, 739 (Mo. banc 2002).

At the evidentiary hearing, Mr. Mischanko and Mr. Glamann testified regarding what they heard during the incident. Mr. Mischanko said that he was at his home across from Movant's house during the incident and heard two "big bangs" separated by approximately twenty seconds followed by "some noise like firecrackers going off." He explained that the sound was like a "rapid fire going off" consisting of about ten to fifteen "bangs." He did not see Movant or observe the direction of the sounds. Mr. Glamann testified that he was at his brother-in-law's house "basically across the street from where the incident happened" when he heard "gunfire." He explained that he "heard several shots. And I heard like an automatic burst. … There was another time elapsed…. And then several more shots." Mr. Glamann testified that "[a]t first, they were single shots" and then he heard "[l]ike an automatic burst" of at least a dozen shots, followed by two or three more gunshots approximately thirty seconds later. He did not know whether the last shots were different than the first shots. Nor was he able to determine where the sounds originated.

The record supports the motion court's finding that Mr. Mischanko's and Mr. Glamann's testimony "about the sounds they heard [did] not support Movant's theory that the Deputy fired first." The only testimony that Mr. Mischanko and Mr. Glamann offered was that they heard two "bangs" or "shots" followed by "rapid fire" or an "automatic burst." Neither offered testimony distinguishing the sounds as shotgun shots or AK-47 shots, and neither testified that he saw

9

whether Movant or Deputy Beier fired first. "If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance." Worthington v. State, 166 S.W.3d 566, 577 (Mo. banc 2005). Accordingly, the motion court did not err in denying Movant's claim based on its finding that Mr. Mischanko's and Mr. Glamann's testimony would not support Movant's theory that Deputy Beier fired first. Point denied.

### Conclusion

The judgment of the motion court is affirmed.


_____
Patricia L. Cohen, Presiding Judge

Roy L. Richter, J., and
Robert M. Clayton III, J., concur.

10